KING, Justice,
concurring in part and dissenting in part:
¶ 25. I agree that the trial court applied the wrong standard and impermissibly placed the burden of proof on Williams to establish that his statement was not the product of a voluntary, knowing and intelligent waiver of his Miranda[4] rights. The impermissible shifting of the burden of proof was manifest error, and the resulting decision to admit Williams’s statement was not supported by the evidence.
¶26. Tyrell Williams is mentally retarded. His IQ is 53. He functions on a second-or third-grade level in all academic areas. He did not graduate from high school, and he participated in special education during his formal schooling. He has received disability benefits for mental incompetence since a very young age. While he can perform some basic household duties, he is unable to perform many simple tasks, such as going to the grocery store. He does not have a driver’s license, and his longest period of continuous employment was approximately two months. Williams also has a history of receiving both inpatient and outpatient mental health services for mental illness and substance abuse. Prior to the incident at hand, Williams had no prior felony arrests or convictions.
¶ 27. On January 30, 2009, Williams allegedly had sexual intercourse with then-thirteen-year-old Ann Smith. Several months later, Officer Jeff Joel arrested Williams in conjunction with this incident and transported him to the Bolivar County Sheriffs Department.[5] Williams’s mother *782 testified that, upon learning of Williams’s arrest, she went to the Sheriffs Department and explained to Officer Joel that Williams was mentally incompetent. Before beginning his interrogation, Officer Joel informed Williams of his Miranda rights. When Officer Joel read Williams his rights, Williams responded “Okay” to each of the rights. When asked if he understood his rights, Williams merely stated ‘Tes, sir.” No additional precautions were taken to ensure that Williams understood his rights, despite Officer Joel’s knowledge of Williams’s mental deficiencies. Williams subsequently made a statement admitting that he had sexual intercourse with Ann Smith, but stating that she told him that she was eighteen, which he believed.
¶ 28. Williams was indicted for the crime of sexual battery. On October 15, 2009, Williams’s counsel filed a Motion for Mental Examination to determine Williams’s competence. He further declared that it was very difficult to adequately prepare a defense due to Williams’s mental incompetence. The court granted the motion and ordered that Williams be evaluated to determine competence, including his capacity to knowingly, intelligently, and voluntarily waive or assert his constitutional rights.
¶ 29. On March 17, 2010, Williams was evaluated by Dr. Gilbert Macvaugh. Dr. Macvaugh issued a thorough eighteen-page report. He determined that Williams’s full-scale IQ was 53, that he functioned on a second- or third-grade level, and that overall, his comprehension was extremely impaired. He concluded that the evaluation suggested that Williams may have
deficits in his capacity to make a knowing and intelligent waiver of his right to silence and his right to legal counsel at the time of his statement to law enforcement, particularly in light of his severely low IQ and limited reading comprehension skills.... In my opinion, it is unlikely that a defendant with an IQ in the low 50s and reading comprehension skills at the second to third grade level would be capable of making a competent waiver of these rights.
Dr. Macvaugh did note that Williams
appeared to have at least some basic familiarity with these rights and was able to spontaneously recite some of the standard wording. However, his actual understanding of these rights, i.e., comprehension of the terms and phrases used in the Miranda warnings; appreciation of the role of defense counsel in that situation, etc., appeared rather limited because of his intellectual disability and his lack of experience in these situations (as evidenced by his confusion regarding the terms “appeal” and “appoint”).
However, because Dr. Macvaugh was concerned that Williams may have been attempting to retrospectively malinger memory deficits for his statement to law enforcement, Dr. Macvaugh determined that he was unable to form an opinion to a reasonable degree of certainty regarding Williams’s ability to knowingly and intelligently waive his Miranda rights. Dr. Macvaugh thus recommended that Williams be evaluated on an inpatient basis at the Mississippi State Hospital at Whitfield.
¶ 30. Williams spent nearly two months at the State Hospital, receiving inpatient observation. During this time, the State Hospital taught Williams about criminal court proceedings, particularly through his work with the Court Competence Assessment Group. At the end of his stay, Drs. McMichael and Gugliano issued a four-page “summary report.” The summary report stated that Williams “is mentally *783 retarded.” The report noted that when Williams was first admitted, he
did not appear to appreciate the importance of his understanding criminal court proceedings. Over the course of this hospitalization, however, he has appeared to make more of an effort to learn this material. He then appeared to have memorized the basic facts of criminal court proceedings, but still could not apply these in hypothetical situation.
By the time of his final interview, Williams “demonstrated the ability to apply the information he had learned in the Court Competence Assessment Group to a variety of hypothetical situations.” The report concluded that Williams had the present capacity to knowingly and intelligently waive or assert his constitutional rights, but stated that the doctors “were unable to form an opinion regarding whether or not Mr. Williams had this capacity at the time of his statements to authorities.” The report further qualified that Williams could “understand his legal situation and confer rationally with his counsel” only if “[c]om-plex legal concepts [are] explained to him in simple language.”
¶ 31. After Williams’s time in the State Hospital, his counsel filed a Motion to Determine Ability to Stand Trial in which he maintained that, notwithstanding the doctors’ conclusions otherwise, Williams’s mental retardation made him unable to assist his attorney in preparing for trial. On December 2, 2010, the trial court held a hearing on this motion, as well as on the oral motion to suppress Williams’s statement to Officer Joel. Williams argued that his statement should be suppressed on the basis that his Miranda waiver was not knowing and intelligent. Williams’s mother testified regarding his inability to understand his Miranda rights. Officer Joel testified that Williams seemed to understand the rights that he was waiving. The trial court found Williams competent to stand trial based on the doctors’ opinions. The court then noted that Officer Joel’s testimony was that Williams had an understanding of his rights, and he noted that in his statement, Williams’s answers to Officer Joel’s questions and his statement at the very end of the interview that he should not have talked to Officer Joel and that he was in trouble showed an understanding of the nature of the proceedings in which he was engaged.[6] The judge stated that “based on the evidence that I have in front of me, I cannot rule that he did not understand his rights as they were stated to him by Jeff Joel.” Thus, the trial court denied Williams’s motion to suppress his statement.
¶ 32. The Fifth Amendment to the United States Constitution provides that, in a criminal case, no person shall be compelled to be a witness against himself. U.S. Const, amend. V.[7] Thus, in Miranda, the United States Supreme Court created procedural safeguards to protect the Fifth Amendment right to silence. Colorado v. Spring, 479 U.S. 564, 572, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987) (citing Miranda, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694).
¶ 33. “[A] suspect may waive his Fifth Amendment privilege, provided the waiver is made voluntarily, knowingly and intelli *784 gently.” Spring, 479 U.S. at 573, 107 S.Ct. 851 (internal quotations omitted). “The inquiry whether a waiver is coerced has two distinct dimensions.” Id. at 573, 107 S.Ct. 851. First, the waiver must be voluntary, in that it must be a choice made freely and deliberately, without intimidation, coercion, or deception. Id. Second, the waiver must be knowing and intelligent, thus “made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it.” Id. (quoting Moran v. Burbine, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)). Courts must examine the totality of the circumstances to determine if the “requisite level of comprehension” exists. Spring, 479 U.S. at 573, 107 S.Ct. 851.
¶ 34. The prosecution bears the burden of proving beyond a reasonable doubt that a statement was given after a valid waiver. Jordan v. State, 995 So.2d 94, 106 (Miss.2008). The determination of whether a defendant’s rights were waived voluntarily, knowingly, and intelligently is a mixed issue of law and fact. Id. “Therefore, this Court will not reverse a trial court’s findings if they were based on appropriate principles of law and supported by substantial evidence.” Id.
¶ 35. While I agree with the majority that the trial court applied the incorrect legal standard, I believe that, even under the correct legal standard, the State utterly failed to meet its burden of proof. The State should not get a second bite at the apple after its complete failure to meet its burden of proof, and Williams’s confession should be suppressed. The substantial evidence leads to the conclusion that the State did not prove beyond a reasonable doubt that Williams validly waived his constitutional rights, as his mental deficiencies prevented him from knowingly and intelligently waiving those rights. Only after two months of inpatient care focused on learning about the court system in the Court Competence Assessment Group at the State Hospital were state doctors able to declare Williams competent to stand trial. Even then, none of the three doctors who evaluated him could state that Williams was competent to waive his Miranda rights at the time that he did. The State Hospital doctors even noted that his understanding of the legal system was limited when he was admitted, and further opined that, due to his disability, he would be able to understand his legal situation only if complex legal concepts were explained in simple language. There is no evidence that Officer Joel explained Williams’s Miranda rights to him in simple language, despite Williams’s mother informing Officer Joel that Williams was mentally incompetent. Further, Dr. Mac-vaugh expressed serious concerns that someone of Williams’s mental capacity could knowingly and intelligently comprehend and waive his Miranda rights. Williams’s mother also testified as to her son’s mental deficiencies and his reliance on her to understand basic concepts. The only evidence that Williams knowingly and intelligently waived his Miranda rights was the testimony of Officer Joel that Williams understood his rights and answered his questions regarding the incident.[8] This scant proof in the face of the abundant evidence of Williams’s mental deficiencies cannot meet the State’s burden of proof.
¶ 36. The evidence mandates the conclusion that Williams’s statement was made without “a full awareness both of the nature of the right being abandoned and the consequences of the decision to aban *785 don it” due to his mental deficiency. See Dover v. State, 227 So.2d 296 (Miss.1969) (suppressing a confession made by a defendant with an IQ of 60, and stating that “we are not prepared to state that a mentally deficient person of the caliber shown here can knowingly and effectively waive his constitutional rights”); Harvey v. State, 207 So.2d 108 (Miss.1968) (suppressing a confession made by a defendant with an IQ of 60). His IQ of 58 and his ability to function only at the level of a second- or third-grader, the fact that three doctors were unable to say that he comprehended the nature of his waiver, the fact that he could be declared competent to stand trial and to prepare a defense only after months of inpatient work in the State Hospital learning about the court system, combined with the fact that he was only found to be competent if complex legal concepts were explained in simple terms (something that was not done during his interrogation) establish that the State failed to prove beyond a reasonable doubt that Williams’s waiver of his Miranda rights was knowing and intelligent. Thus, the decision of the trial court to admit Williams’s confession was not supported by substantial evidence.
¶ 37. Accordingly, I would reverse the trial court’s decision to admit Williams’s confession and the Court of Appeals decision affirming that judgment, and remand the case for a new trial in which the confession is suppressed. The State failed to meet its burden of proof. I cannot agree that the State should now receive a second chance to prove that which it did not prove in the first instance.
KITCHENS AND CHANDLER, JJ., JOIN THIS OPINION.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. As noted by the majority, the trial court placed much emphasis on the fact that Williams's answers to Officer Joel’s questions regarding the incident were responsive. However, responses to questions regarding a specific event (i.e., the alleged assault) do not evince comprehension of the complex legal concept of waiving one's Miranda rights.

. The Mississippi Constitution similarly provides that, in a criminal prosecution, no person shall be compelled to give evidence against himself. Miss. Const, art. 3, § 26.

. As noted, infra, the ability to answer direct questions regarding an event and the ability to comprehend the nature of constitutional rights are two horses of a different color.